## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

---

UNITED STATES OF AMERICA
ex rel. Bryce Lindgren
Kenneth Joel Haber, Esq.
Michael J. Tabacco, Esq.
12705 Fernberry Lane
Boyds, Maryland 20841
Relator/Plaintiff,

v.                                                    Civil Action No.:
                                                      FILED UNDER SEAL

Capstone Healthcare, LLC
8601 Dunwoody Pl St 444,
Atlanta, GA  30350
C/O Registered Agent
 Rachel Sheats,
 305 Providence Pt.,
 Woodstock, GA, 30189

Jay Johnson
8601 Dunwoody Pl St 444,
Atlanta GA 30350

Drew Maloney
8601 Dunwoody Pl St 444,
Atlanta GA 30350

Sparrow Labs, L.L.C., D/B/A Sparrow Healthcare, L.L.C.
2408 Timberloch Place Suite B1
Woodlands, TX 77380
C/O Register Agent
Munear Ashton Kouzbari
Registered Office Street Address
4910 Stanford Drive
Dallas, TX 75209

Jake Wexler
2408 Timberloch Place Suite B1
Woodlands, TX 77380

1

Paul Wexler
2408 Timberloch Place Suite B1
Woodlands, TX 77380

Austin Whiles
8601 Dunwoody Pl St 444,
Atlanta GA 30350

Genus 3 Holdings, LLC
16801 ADDISON RD STE 100
ADDISON TX 75001-5625
 C/O Register Agent
Carrie Botts
16801 ADDISON RD STE 100
ADDISON TX 75001-5625


_____/

# FALSE CLAIMS ACT COMPLAINT

This is an action to recover damages and civil penalties on behalf of the United States of America ("United States") by Relator/Plaintiff Bryce Lindgren, by and through his attorneys, Kenneth J. Haber, Esq., and Michael J. Tabacco, both of the Law Office of Kenneth Joel Haber, P.C., 12705 Fernberry Lane, Suite A, Boyds, MD 20852, arising out of false claims presented by the Defendants herein, by and through their agents and co-conspirators, under the Medicare program and other Federal Healthcare Programs.


## JURISDICTION AND VENUE

1.      This action arises under the provisions of 31 U.S.C. §§3729 *et seq.*, commonly called False Claims Act ("FCA").  The FCA provides, among other things, that the United States District Courts have exclusive subject matter jurisdiction over actions brought under it.

2.   Under 31 U.S.C. §3732(a), "[a]ny action under Section 3730 may be brought in any

2

judicial district in which the defendant . . . can be found, resides, transacts business, or in which any act proscribed by Section 3729 occurred."

    3. Under Subsection 3730(b)(2) of the FCA, this Complaint is to be filed in camera and to remain under seal for a period of at least sixty (60) days and shall not be served on the Defendant until the court so orders. The United States may elect to intervene and proceed with the action within sixty (60) days after it receives both the Complaint and the material evidence and information.  As required by Subsection 3730(a)(2) of the FCA, Relator Bryce Lindgren has provided both the Attorney General and the United States Attorney for the United States District of Maryland, simultaneous with the filing of this Complaint, a statement of all material evidence and information which he possesses and that relates to the issues raised in this Complaint. The statement of evidence and information substantially supports the allegations made in the Complaint.

## PARTIES TO THE ACTION

    4. Qui tam Plaintiff/Relator Bryce Lindgren, (hereinafter "Bryce", "Relator Lindgren" and/or "Relator") is a citizen and resident of the State of Kansas. He is employed by Defendant Capstone Healthcare, LLC. Relator Lindgren brings this action on behalf of the United States and himself. Relator is employed as a "Sales Representative" (hereinafter, Sales Rep) by Defendant Capstone Healthcare, L.L.C. Relator has not falsified record nor processed tests without an actual physician ordering the test.

    5. Defendant Capstone Healthcare, LLC D/B/A ISPM Labs, L.L.C. (hereinafter, "Capstone" or "Defendant Capstone" or "ISPM Labs, LLC" or ISPM Labs) is incorporated in the State of Georgia and its' corporate headquarters is in Atlanta Georgia.

6.   Defendant Capstone Healthcare, LLC. conducts laboratory testing business throughout the United States, including in the District of Maryland and has testing facilities throughout the United States. Defendant Capstone has sought and obtained under the name of ISPM Labs, LLC, emergency use authorization for one of its laboratory tests devices by the name of Genus SARS-CoV-2 Assay. This authorization was obtained through the Federal Food and Drug Administration (FDA), Silver Spring, Maryland as part of Capstone's ongoing doing business in the State of Maryland.

7. Defendant Capstone has been operating since approximately, 2013, and is registered with the Maryland State Office Health Care Quality (OHCQ), at 7120 Samuel Morse Drive, 2nd Floor, Columbia, Maryland 21046-3422.  OHCQ licenses and certifies facilities in the State of Maryland. Licensing authorizes a facility to do business in the State while certification authorizes a facility to participate in Medicare and Medicaid in Maryland.

   Capstone conducts its laboratory business throughout the United States, including doing business in the State of Maryland and it undertakes its laboratory testing business without physicians' orders but rather upon the instructions of non-licensed staff such as Defendant Jay Johnson and those who are employed under him and where the physicians' signatures are forged on the documentation requiring physicians' signature for billing of the services. This type of activity is conducted at the various nursing homes and other facilities at which the Defendants have contracts and/or operating agreements. Defendant Capstone is liable for the damages cited in this complaint. The "Sales Reps" are paid on a commission basis based upon the billings resulting from the testing that the Sales Reps are responsible for having arranged, without an actual physician ordering the tests, that are not based upon medical necessity as determined by a physician as required by law, except for Relator who arranges for testing but only based upon

medical necessity as determined by an actual physician.

Defendant Capstone undertakes its laboratory testing business without physicians' orders but rather upon the instructions of non-licensed staff such as Defendant Jay Johnson and those who are employed under him. Defendant Austin Whiles is the Sr. VP of Business Development of Defendant Capstone and is also responsible for the false claims submitted by Defendant Capstone. Defendant Capstone is listed as ISPM Labs, LLC d/b/a Capstone Diagnostic, LLC. in the State of Maryland. The Defendants herein falsify and cause to be falsified physicians' signatures on various order forms that are required for the payment of these services by Medicare and Medicaid. This type of activity is conducted at the various nursing homes and other facilities at which the Defendants have contracts and/or operating agreements. Defendant Capstone is liable for the damages cited in this complaint and does and causes to be done its illegal billing procedures in this District.

8.   Defendant Sparrow Labs, L.L.C., D/B/A Sparrow Healthcare, L.L.C. (hereinafter "Sparrow" and/or "Defendant Sparrow" and/or Sparrow Healthcare, L.L.C.) is incorporated in the state of Texas and its corporate headquarters located in Woodlands, TX.  Sparrow conducts its illegal laboratory business throughout the United States, including doing business in the State of Maryland and it undertakes its laboratory testing business without physicians' orders but rather upon the instructions of non-licensed staff such as Defendant Jay Johnson and those who are employed under him and where the physicians' signatures are forged on the documentation requiring physicians' signature for billing of the services. This type of activity is conducted at the various nursing homes and other residential facilities at which the Defendants have contracts and/or operating agreements. Defendant Sparrow is liable for the damages cited in this complaint. Defendant Sparrow Labs, L.L.C. was establish in 2014 and has been operating since

approximately, 2018. The "Sales Reps" are paid on a commission basis based upon the billings resulting from the testing that Sparrow's Sales Reps are responsible for.

9. Defendant Jay Johnson is the Chief Executive Officer (CEO) of Defendant Capstone, and he is a named defendant in this matter. Defendant Jay Johnson is also the CEO of co-defendant corporation, Sparrow Healthcare, LLC. Defendant Johnson is liable for the violations alleged here. Defendant Johnson does business in this district and causes business to be performed in this district. Defendant Johnson caused the violations alleged in this complaint to be done in this district and is liable for the violations alleged here.

10. Defendant Austin Whiles was Chief Sales Officer and later transitioned to become the Senior Vice President of Business Development. Defendant Whiles is liable for the violations alleged here. Defendant Whiles does illegal business in the district of Maryland and causes illegal business to be performed in this district. Defendant Whiles caused the violations alleged in this complaint to be done in this district and is liable for the violations alleged here.

11. Defendant Capstone self-purports to perform various services including but not limited to the following: predictive & diagnostic genetic testing, in-house performed qualitative immunoassay testing, in-house performed quantitative confirmations with highly accurate LC/MS/MS technology, an extensive drug testing offering, customizable drug testing panels, consulting services with geneticists and toxicologists, and private consultation with toxicology experts, as well as general laboratory testing. Capstone does laboratory testing without orders from physicians but with the forged signatures of physicians. Defendant Capstone does and causes to be done the various violations charged herein in this District.

12. Defendant Capstone employs approximately 50 employees of which approximately 15 are known as Sales Representatives (hereinafter, "Sales Reps") that perform basic laboratory

technician work. The Sales Reps are also tasked with contacting local long term care residential and other facilities and engaging them to enter into contracts with Defendant Capstone. The Sales Reps are paid on a commission basis. The Sales Reps are paid for each test performed on patients whom the Sales Rep was responsible for bringing into Capstone's testing program.  The Sales Reps either determine what tests are to be performed by the defendant labs or cause other non-professionals to make such professional determinations. The Sales Reps are paid on a commission basis based upon the billings resulting from the testing that the Sales Reps are responsible for.

13.  Defendant Capstone contracts with long-term residential facilities on a nationwide basis, including in the State of Maryland to provide exclusive lab services for said facilities, as to the services provided by Capstone. Defendant Capstone also performs COVID testing.

14.  Defendant Capstone maintains participation agreements with commercial insurance companies as well as with Medicare and Medicaid.

15. Defendant Capstone focuses its lab testing, etc, on services that are reimbursed by commercial insurance companies, but Capstone also participates with the Medicare and Medicaid programs and Capstone commits the Medicare violations cited herein in Maryland.

16. Defendant Drew Maloney is the Chairman of the Board of Directors of Capstone, and a founder of same. He is a named defendant in this complaint and does business in the State of Maryland. Defendant Maloney is also an advisor to co-Defendant Sparrow Labs, LLC.

17.  Defendant Maloney does and causes to be done business in the district of Maryland and causes the fraudulent business cited herein to be performed in this district. Defendant Maloney caused the violations alleged in this complaint and is liable for the violations alleged here.

18.  Defendant Sparrow Labs is owned and operated by Defendants Paul and Jake Wexler.
Defendants Paul and Jake Wexler do themselves and cause Defendant Sparrow Labs to
do business nationwide and in the District of the State of Maryland. Defendants Paul and
Jack Wexler does and cause to be done business in the State of Maryland by and through
an additional company which Paul Wexler established and owns by the name of Fillakit,
L.L.C. Paul and Jake Wexler caused Fillakit to apply for approval to supply testing kits
for coronavirus and it was approved by the FDA located in the State of Maryland. Fillakit
was paid 7.3 million dollars for test tubs needed for the tracking the spread of coronavirus
nationwide. Instead of standard vials, Fillakit supplied plastic tubs made for bottling soda
which state health officials have stated were unusable for coronavirus testing.

19. Sparrow Labs is the successor corporation to a corporation by the name of Cleargate
Labs.

20.  Cleargate Labs was also owned and operated by Paul and Jake Wexler.

21.  Paul Wexler is a part owner and founder of Sparrow Labs after a prior lab by the name
of Cleargate Labs got in trouble with the government after a Medicare audit. Paul Wexler
is the father of Jake Wexler.

22.  Jake Wexler is a founder and part owner of Sparrow Labs. Jake is the son of Paul
Wexler.

23. Cleargate was investigated/audited by Medicare in approximately 2018. As a result of the
Medicare investigation/audit, Paul and Jake Wexler, the owners of Cleargate, established
the new corporation by the name "Sparrow Labs, LLC" (hereinafter, Sparrow or Sparrow
Labs). Sparrow Labs commits the various Medicare violations cited herein in this
District. Paul and Jake Wexler are both responsible and cause Sparrow's Medicare

violations to be committed in this District.

24. Defendant Genus 3 Holdings, LLC (hereinafter Genus 3) is incorporated in Texas and located at 16801 ADDISON RD STE 100 ADDISON TX 75001-5625 with a registered agent of Carrie Botts at the same address. Genus 3 Holdings, LLC (hereinafter Genus 3) is the billing company that prepares the billings for both Defendants Sparrow and Capstone. On information and belief, the owners and/or controllers of Genus 3 are the same individuals who control and/or own Sparrow and Capstone. These individuals use Genus 3 to prepare their false and fraudulent billings for Sparrow and Capstone.

25. All of the foregoing named Defendants herein, Genus 3, Capstone, Jay Johnson, Drew Maloney, Austin Whiles, Sparrow, Jake Wexler, and Paul Wexler are jointly and severally liable for the damages cited herein and are co-Defendants herein. They have collaborated to form an operational organization where Defendant Sparrow and Capstone would exchange billings where at times one would bill for tests performed by the other, as well as they bill for their own services at other times. Each of Jay Johnson, Drew Maloney, Austin Whiles, Jake Wexler, and Paul Wexler actively participated in this illegal scheme and artifice to defraud the government as set out in this complaint. Each above named Defendant does conduct business and causes business to be conducted and performed in the District of Michigan.

26. Defendant Sparrow Labs performs medical laboratory tests and other lab services through a national network of primary clinical laboratories and specialty testing laboratories, including in the State of Maryland. Sparrow's website states that it delivers "superior microbial data to healthcare providers all over the country." Defendant Sparrow also performs COVID testing.

27. Defendant Sparrow Labs employs approximately 50 employees with 15 of them known as Sales Reps that perform basic laboratory technician work. The Sales Reps are   also tasked

with contacting long term care facilities and engaging them to enter into contracts and/or agreements with Sparrow Labs. The Sales Reps are paid on a commission basis for tests performed pursuant to falsified and forged physician orders.

28.   Defendant Capstone's employees and agents assisted Cleargate to reorganize itself after Cleargate went through a Medicare investigation/audit. Cleargate's staff and owners became the staff and owners of the new corporation, Sparrow.  Defendants Jake and Paul Wexler are the owners of Sparrow.

29. Defendant Sparrow contracts with long-term residential facilities on a nationwide basis, including in the State of Maryland, to provide exclusive lab services for said facilities.

30. Defendant Sparrow maintains participation agreements with commercial insurance companies as well as with Medicare and Medicaid.

31. Defendant Sparrow focuses its lab testing, etc, on services that are reimbursed by Medicare and Medicaid, while also participating in commercial insurance programs.

32. Defendant Capstone focuses on commercial insurance but it does Medicare and Medicaid services as well. Defendant Capstone has been filing false and fraudulent claims since approximately 2013.

33.   Defendant Sparrow and Defendant Capstone work together so that if Capstone was audited, and subjected to recoupment or otherwise sanctioned by Medicare, then the moneys of Sparrow would not be at risk and visa versa.  Defendants Sparrow and Capstone started working together since approximately 2018 conducting illegal testing.  Defendants Sparrow and Capstone both use the billing company Genus 3 Holdings, LLC to process their illegal claims.

## REIMBURSEMENT PROVISIONS FOR LABORATORY SERVICES UNDER THE MEDICARE PROGRAM

34. The United States Department of Health and Human Services ("DHHS") administers federal Medicare programs under the Social Security Act ("the Act").

35. The Medicare Claims Processing Manual at Chapter 16 sets out the program requirements governing reimbursement of Medical Laboratory Services.

36. Other professional and ancillary services and items are reimbursed for by Medicare when rendered on behalf of a program beneficiary as part of a covered medically necessary and reasonable service.

37. The Medicare program does not pay for laboratory services and items if those services or items are unreasonable or not medically necessary.

38. Medicare reimburses for laboratory services for medically necessary and reasonable medical laboratory test panels.

39. For laboratory services to be reimbursed by Medicare, the services are required to be ordered by a licensed medical professional who is functioning within the scope of his/her practice.

### RELATOR'S STATEMENT OF FACTS

40. Relator Bryce Lindgren was hired by Defendant Capstone Healthcare, L.L.C. as a Sales Representative (Sales Rep), starting in January 2020, as a 1099 independent contractor employee. Capstone placed Relator with Cleargate Laboratories that subsequently became Sparrow Laboratories to assist them. It was not until November 2020 that Relator was provided a contract so that he could be paid commissions. The allegations contained in this complaint are based upon the direct, independent, and personal knowledge of Relator Lindgren and based upon

11

his information and belief, obtained from his direct, independent, and personal knowledge predicated upon his observations of, experiences at and conversations with and concerning the various Defendants and the other Sales Representatives.

41. Relator refused to create and submit falsified documentation required for filing false claim billings.

42. Nevertheless, Defendants prepared and filed false claims pertaining to Relator's patients without his assistance.

43. Defendants Capstone and Sparrow have not terminated relator's service but permits him to continue to function as a Sales Representative.

44. Relator continues to work in a sales capacity and has several accounts that continue to send specimens with legitimate physician orders.

45. Relator is compensated by Capstone and Sparrow per the orders coming in from his patients with legitimately authorized physician orders to whom he pays nothing for the orders upon which he is paid his compensation.

46. Relator does not make any decision as to what goes into the orders that are attributed to his patients.

47. The orders obtained through Relator are all authorized by the patients' physicians with whom Relator has no financial relationship.

48. Nevertheless, Relator discusses the Defendants' illegal operations with various staff of the Defendants Capstone and Sparrow.

49. The Defendants herein pay sums of monies to various nursing facilities in order to be permitted to run tests that are not medically necessary, not order by physicians and often at prices in the thousands of dollars.

50.   Defendants do falsify the test requisition forms by inserting the patients' physicians' names and photo-copied signatures on the test requisition forms without the physicians' knowledge or consent and to falsely document medical necessity for the tests where medical necessity does not exist nor justify the tests run.

51. The Defendants undertake these fraudulent tests by using falsified requisition forms from hundreds of fraudulently collaborating nursing home across the country in their multiple labs, thousands of times a day.

52. The Defendants undertake these fraudulent tests by using falsified requisition forms and by copying and pasting onto these forms physicians' signatures and identities without the physicians' knowledge or approval.

53. The Defendants undertake these fraudulent tests by using falsified requisition forms by adding on these forms ICD 10 Diagnostic codes justifying services without the physicians' knowledge or consent and without the diagnostic conditions existing for the particular patient.

54. The Defendants undertake these fraudulent tests by using falsified requisition forms for a variety of expensive tests including but not limited to a test for Pharmacogenomics (PGX) which costs approximately $15,000, when not medically necessary and fraudulently documented for same and not ordered by the patient's physician.

55. The Defendants pay to personnel in the various nursing facilities where they obtain their patient specimens thousands of dollars to be able to continue to run these tests with falsified documentation.

56.   Defendants Genus 3, Austin Whiles, Jay Johnson, Drew Maloney, Jake Wexler, Paul Wexler, Sparrow Labs and Capstone Labs all have participated in preparing and causing to be prepared false and fraudulent Medicare claims as described herein for knowingly presenting and

causing to be presented for payment and approval and did knowingly make and use and cause to be made and used a false record and statement as set out herein material to a false and fraudulent claim; all in violation of 31 USC 3729-3733.


## CLAIMS

### BILLING FOR FRAUDULENT AND UNNECESSARY MEDICAL SERVICES

Relator re-asserts, re-alleges, and incorporates herein by reference the allegations contained in Paragraphs 1 through 56, as if fully set forth herein.

57. The defendants herein Capstone, Jay Johnson, Drew Maloney, Sparrow, Jake Wexler, Paul Wexler and Austin Whiles, on or about such dates set out below and pertaining to specific patients set out below, did knowingly and in reckless disregard of the truth and falsity of the information  submitted, present, and cause to be presented to officers and employees of the United States Government, claims for reimbursement and payment and approval from the Medicare Health Care Program for the services and items that were medically unnecessary and unreasonably as rendered by the Defendants and caused by the Defendants to be rendered by Defendants, including but not limited to the various tests cited below on Medicare patients that were false and fraudulent in that they were unreasonable and not medically necessary as described in this complaint, that the purported ordering physicians did not order the tests and Defendants knew them to be medically unnecessary and unreasonable and the Defendants fraudulently prepared and caused to be prepared false and fraudulent billing documentation so as to falsely and fraudulently justify the order of and reimbursement for these tests including the use of false and fraudulent billing documentation with the forged and fraudulently executed signatures of the patients' physicians and the false and fraudulent entry of diagnostic codes on

14

the billing documentation without the consent or knowledge of the patients' physicians.

CLAIM 1

58. As set out above in paragraphs numbered 1 through 57, and incorporated herein by reference as if fully set out, on or about 3/10/2020, the named defendants herein did render on behalf of a patient from the Topeka Center for Rehabilitation and Healthcare a medically unnecessary and unreasonable test and caused to be presented and billed a claim for the medically unnecessary and unreasonable test with falsified paperwork including the diagnostic codes and a falsified copy of patient's physician's signature for patient M.S. with a report date of 3/10/2020 and with a requisition # of TCRHC-20-00083 for a test for Pharmacogenomics (PGX) in the amount of approximately $15,000.

CLAIM 2

59. As set out above in paragraphs numbered 1 through 57 and incorporated herein by reference as if fully set out, on or about 3/10/2020, named defendants herein did render on behalf of a patient from the Topeka Center for Rehabilitation and Healthcare a medically unnecessary and unreasonable test and caused to be presented and billed a claim for the medically unnecessary and unreasonable test with falsified paperwork including the diagnostic codes and a falsified copy of patient's physician's signature for patient C.S. with a report date of 2/27/2020 and with a requisition # of TCRHC-20-00085 for a test for Pharmacogenomics (PGX) in the amount of approximately $15,000.

CLAIM 3

60. As set out above in paragraphs numbered 1 through 57, and incorporated herein by reference as if fully set out, on or about 2/27/2020, named defendants herein did render on behalf

of a patient at the Topeka Center for Rehabilitation and Healthcare a medically unnecessary and unreasonable test and caused to be presented and billed a claim for the medically unnecessary and unreasonable test with falsified paperwork including the diagnostic codes and a falsified copy of patient's physician's signature for patient C.S. with a report date of 2/27/2020 and with a requisition # of TCRHC-20-00086 for a test for Pharmacogenomics (PGX) in the amount of approximately $15,000.

CLAIM 4

61. As set out above in paragraphs numbered 1 through 57, and incorporated herein by reference as if fully set out, on or about 2/27/2020, named defendants herein did render for a patient at the Topeka Center for Rehabilitation and Healthcare a medically unnecessary and unreasonable test and caused to be presented and billed a claim for the medically unnecessary and unreasonable test with falsified paperwork including the diagnostic codes and a falsified copy of patient's physician's signature for patient W.T. with a report date of 2/27/2020 and with a requisition # of TCRHC-20-00087 for a test for Pharmacogenomics (PGX) in the amount of approximately $15,000.

Claim Nos. 5- 23

62. As set out above in paragraphs numbered 1 through 57, and incorporated herein by reference as if fully set out, on or about the dates cited below, named defendants herein by and through Capstone did render for patient(s) cited below at the Topeka Center for Rehabilitation and Healthcare a medically unnecessary and unreasonable test and caused to be presented and billed a claim for the medically unnecessary and unreasonable test with falsified and fraudulent paperwork including falsified  diagnostic codes and a falsified copy of patient's physician's signature for patient(s) cited below with a report date cited below and with a requisition No.

16

cited below for a test for Pharmacogenomics (PGX) in the amount of approximately $15,000.

| | Claim # | On or about Date | Report Date | requisition # | Patient | Test |
|---|---|---|---|---|---|---|
| 63. | 5 | 2/27/20 | 2/27/20 | TCRHC-20-00088 | SJW | PGX |
| 64. | 6 | 2/27/20 | 2/27/20 | TCRHC-20-00089 | DW | PGX |
| 65. | 7 | 2/27/20 | 2/27/20 | TCRHC-20-00090 | DW | PGX |
| 66. | 8 | 2/27/20 | 2/27/20 | TCRHC-20-00091 | DW | PGX |
| 67. | 9 | 2/27/20 | 2/27/20 | TCRHC-20-00106 | BR | PGX |
| 68. | 10 | 2/27/20 | 2/27/20 | TCRHC-20-00108 | LC | PGX |
| 69. | 11 | 2/27/20 | 2/27/20 | TCRHC-20-00021 | VK | PGX |
| 70. | 12 | 2/27/20 | 2/27/20 | TCRHC-20-00022 | PL | PGX |
| 71. | 13 | 2/27/20 | 2/27/20 | TCRHC-20-00025 | DB | PCX |
| 72. | 14 | 2/27/20 | 2/27/20 | TCRHC-20-00009 | TB | PCX |
| 73. | 15 | 2/27/20 | 2/27/20 | TCRHC-20-00014 | SG | PCX |
| 74. | 16 | 2/27/20 | 2/27/20 | TCRHC-20-00018 | HH | PCX |
| 75. | 17 | 2/27/20 | 2/27/20 | TCRHC-20-00030 | BW | PCX |
| 76. | 18 | 2/27/20 | 2/27/20 | TCRHC-20-00034 | MAC | PCX |
| 77. | 19 | 2/27/20 | 2/27/20 | TCRHC-20-00038 | EAC | PCX |
| 78. | 20 | 3/7/21 | 3/7/20 | TCRHC-20-00042 | DE | PCX |
| 79. | 21 | 2/27/20 | 2/27/20 | TCRHC-20-00043 | MG | PCX |
| 80. | 22 | 2/27/20 | 2/27/20 | TCRHC-20-00044 | JG | PCX |
| 81. | 23 | 2/27/20 | 2/27/20 | TCRHC-20-00048 | SLH | PCX |

CLAIMS 24- 42

82. As set out above in paragraphs numbered 1 through 57, and incorporated herein by

reference as if fully set out, on or about the dates cited below, named defendants herein by and through Sparrow did render for a patient(s) cited below at the Legacy on College Hill healthcare facility a medically unnecessary and unreasonable test and caused to be presented and billed a claim for the medically unnecessary and unreasonable test with falsified and fraudulent paperwork including falsified diagnostic codes and a falsified copy of patient's physician's signature for the patient(s) cited below with a report date cited below and with a requisition No. cited below for a test for Pharmacogenomics (PGX) in the amount of approximately $15,000.

| | Claim # | On or about Date | Report Date | requisition # | Patient | Test |
|---|---|---|---|---|---|---|
| 83. | 24 | 2/24/20 | 2/24/20 | LCH-20-00045 | MA, Jr. | PCX |
| 84. | 25 | 2/24/20 | 2/24/20 | LCH-20-00046 | GB | PCX |
| 85. | 26 | 2/24/20 | 2/24/20 | LCH-20-00047 | LB | PCX |
| 86. | 27 | 2/24/20 | 2/24/20 | LCH-20-00048 | JB | PCX |
| 87. | 28 | 3/2/20 | 3/2/20 | LCH-20-00049 | TB | PCX |
| 88. | 29 | 3/2/20 | 3/2/20 | LCH-20-00050 | JB | PCX |
| 89. | 30 | 2/24/20 | 2/24/20 | LCH-20-00051 | DAD | PCX |
| 90. | 31 | 2/24/20 | 2/24/20 | LCH-20-00052 | BF | PCX |
| 91. | 32 | 3/2/20 | 3/2/20 | LCH-20-00053 | AF | PCX |
| 92. | 33 | 2/24/20 | 2/24/20 | LCH-20-00054 | BF | PCX |
| 93. | 34 | 3/2/20 | 3/2/20 | LCH-20-00055 | DF | PCX |
| 94. | 35 | 2/24/20 | 2/24/20 | LCH-20-00056 | THF | PCX |
| 95. | 36 | 3/2/20 | 3/2/20 | LCH-20-00057 | IG | PCX |
| 96. | 37 | 3/3/20 | 3/3/20 | LCH-20-00058 | LH | PCX |
| 97. | 38 | 2/24/20 | 2/24/20 | LCH-20-00059 | MH | PCX |

| 98.  | 39 | 2/24/20 | 2/24/20 | LCH-20-00032 | GWM | PCX |
| 99.  | 40 | 2/24/20 | 2/24/20 | LCH-20-00033 | MWP | PCX |
| 100. | 41 | 3/02/20 | 3/02/20 | LCH-20-00034 | VLP | PCX |
| 101. | 42 | 2/24/20 | 2/24/20 | LCH-20-00035 | KLS | PCX |

## CLAIMS No. 43- 1001

### Conspiracy

Relator re-asserts, re-alleges, and incorporates herein by reference the allegations contained in Paragraphs 1 through 57 as if fully set forth herein.

102.     From approximately 2018 and continuing until the present, Defendants Genus 3, Jay Johnson, Drew Maloney, Jake Wexler, Paul Wexler and Austin Whiles, on their own behalf and on behalf of Defendants Sparrow and Capstone and other unknown and uncharged additional parties did combine, conspire and agree together and with each other to defraud the United States, out of over one hundred million dollars ($100,000,000) and more from testing patients at over 1000 residential facilities at which Defendants have arrangements, and by violating 31 U.S.C. § 3729(a)(1)(A) and (a)(1)(B) for the purpose of obtaining and aiding and abetting to obtain payment from the government and approval by the government for said sums per various thousands and thousands of false and fraudulent claims against the government and the use of false and fraudulent claims against the government, including false claims for having undertaken (1) over 3000 false and fraudulent Covid test each day; (2) false and fraudulent claims by use of false and fraudulent documentation of medical necessity; (3) false and fraudulent claims by use of false and fraudulent physicians' purported signatures; (4) false and fraudulent claims by use of Sales Representatives who procure these false claims while they are being paid for each claim on

a commission basis in violation of the federal healthcare anti-kickback statute; for thousands of times over 1001 claims; all in violation of 31 U.S.C. § 3729(a)(1)(C), as set out in the preceding paragraphs 1 through 101 herein which are fully incorporated herein by reference.

<u>Overt Acts</u>

103. In furtherance of and to affect the object of the above cited conspiracy, the acts and omissions charged in paragraphs 1 through 102, which were committed by the various Defendants named herein, are alleged to have been committed and are incorporated herein, as if fully set out herein, as overt acts. This was to illegally procure over one hundred million dollars ($100,000,000) by illegally perform testing on patients at over 1000 residential facilities at which Defendants have arrangements to illegal procure test referrals made to the Defendants and the Defendants to illegally perform and document tests, as to each and every of the above referenced claims cited in the foregoing paragraphs.

104. The acts cited in paragraphs 1 through 103 are each overt acts in furtherance of and to affect the object of the above referenced conspiracy and each is alleged by reference as if fully set out herein.

**CAUSATION AND DAMAGES AS TO ALL CLAIMS FOR RELIEF**

105.     As a direct and proximate result of the foregoing, the United States Government has incurred substantial costs and has suffered substantial damages, as stated herein and to be further presented at trial.

106.     As a direct and proximate result of the foregoing, the United States Government has incurred substantial costs and has suffered substantial damages, due to Defendants' scheme

and artifice to defraud the Medicare program as stated herein.

107.      As a direct and proximate result of the foregoing, the Medicare program has expended substantial funds in reimbursing Defendants for the claims presented, which reimbursement that the Defendants were not entitled to receive.

108.      As a direct and proximate result of the foregoing, the Medicare program and other government healthcare programs have been harmed by Defendants' scheme and artifice to defraud, as stated herein, practiced against the United States Department of Health and Human Services and other government agencies.

109.      As a direct and proximate result of the foregoing, Defendants are continuing to be reimbursed from Medicare and other government programs at amounts that the Government programs ought not to have been charged, and in amounts to be determined.

**DEMAND FOR JURY TRIAL AND PRAYER FOR RELIEF**

Relator/Plaintiff respectfully demands a jury trial and pray for judgment against each Defendant named herein, as follows:

(a)   That by reason of the violations of the False Claims Act as set out in this Complaint, this Court enter judgment against Defendants in an amount equal to three (3) times the amount of damages the United States Government has sustained because of Defendants' actions, plus a civil penalty of not less than Five Thousand Dollars ($5,000.00) and not more than Eleven Thousand Dollars ($11,000.00) for each violation of 31 U.S.C. §3729;

(b)   That Relator, as Qui Tam Plaintiff, be awarded the maximum amount allowed pursuant to Section 3730(d) of the False Claims Act and/or any other applicable provision of law;

(c)   That Relator be awarded all costs of this action, including reasonable attorneys' fees and costs of bringing this suit;

(d)   That equitable relief be issued to prevent future violations by the Defendants and wasting of any and all funds under the control and possession of the Defendants, except as specifically approved by the court; and

(e)   That Relator/Plaintiff has such other relief as this Court deems just and proper.


Respectfully Submitted,
Kenneth Joel Haber

_____ s/ _____   Date: 9/28/21
Kenneth Joel Haber, Esq.
**Fmr. Assistant U.S. Attorney**
**Fmr. Senior Attorney OIG-HHS**
**Fmr. Priority Security Asset FBI 1960s**
**(declassified 2011)**
MD USDC Bar ID #: 23643
Office: 301-670-0016
Fax: 301-948-3091
Email: kjhesq@haberslaw.com
12705 Fernberry Lane
Boyds, MD 20841

s/   Date: 9/28/21
Michael J. Tabacco, Esq.
MD Atty #: 0606130301
Office: 301-670-0016
Fax: 301-948-3091
Email: mtabacco@haberslaw.com
12705 Fernberry Lane
Boyds, MD 20841